UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DESIREE ELLIS, *pro se*,                                         :
                                                                :
                                        Plaintiff,              :
                                                                :        **MEMORANDUM AND ORDER**
                       -against-                                :             09-CV-4333 (DLI)
                                                                :
                                                                :
MICHAEL J. ASTRUE, Commissioner                                 :
of Social Security,                                             :
                                                                :
                                        Defendant.              :
-----------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

*Pro se* Plaintiff Desiree Ellis filed the instant appeal of a decision by the Commissioner

of Social Security that concluded Plaintiff was not disabled from May 10, 1999 through August

10, 2003. On March 29, 2010, the Commissioner moved for judgment on the pleadings pursuant

to Fed. R. Civ. P. 12(c), seeking an affirmation of the denial of benefits. On April 22, 2010,

Plaintiff submitted an affidavit in opposition to the Commissioner's motion. For the reasons set

forth below, the Defendant's motion is denied, and the case is remanded to the Commissioner for

further evidentiary proceedings.

## BACKGROUND

### A.      Procedural History

On August 9, 2000, Plaintiff filed an application for supplemental security income

("SSI") under the Social Security Act (the "Act"). On February 8, 2001, the Social Security

Administration denied the claim. On February 15, 2001, Plaintiff requested a hearing by an

Administrative Law Judge ("ALJ"). The hearing was held before ALJ Jane Polisar on February

14, 2002. (Administrative Record ("R.") at 535-47.) By decision dated February 22, 2002, ALJ

Polisar concluded that Plaintiff was disabled within the meaning of the Act from May 10, 1999 through August 31, 2000. (R. 32-41.) On May 8, 2002, ALJ Polisar amended the decision and extended the period of disability through September 1, 2000. (R. 42-45.) On June 13, 2002, Plaintiff requested an Appeals Council review because she wanted the disability time period to remain open.[1] (R. 71-74.) By order dated December 18, 2003, the Appeals Council vacated the ALJ Polisar's decision and remanded the case for further proceedings. (R. 29-31.)

On August 28, 2007, after a hearing at which Plaintiff appeared without counsel, ALJ Polisar issued a decision finding that Plaintiff was not disabled from May 10, 1999 through August 10, 2003. (R. 10-19.) On August 26, 2009, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. On October 1, 2009, Plaintiff filed the instant action, *pro se*, seeking judicial review of the denial of benefits.

## B.     Non-medical and Testimonial Evidence

Plaintiff was born on December 16, 1964 and received a high school diploma in 1982. (R. 104, 114.) After high school, Plaintiff worked in sales at K-Mart for approximately two weeks, and as a seasonal laborer at Tell Chocolate for approximately five months. (R. 109.)

In 1998, Plaintiff began working in the shirt unit of the dry cleaning store, Cleanorama. (R. 108, 109.) At the dry cleaning store, Plaintiff lifted wet shirts and bags of laundry, washed, marked, sorted, and boxed shirts, repaired buttons, and placed shirts on hangers. (R. 567.) Plaintiff frequently lifted items weighing twenty-five pounds and, occasionally, lifted items

---

[1] While Plaintiff's case was pending before the Appeals Council, Plaintiff filed a new claim in August 2003. The claim was denied initially, and Plaintiff requested a hearing. After the hearing, ALJ Robert J. Lazarus issued a fully favorable decision on May 27, 2005, finding Plaintiff disabled since August 11, 2003. The decision by ALJ Lazarus is not the subject of the instant appeal.

weighing up to fifty pounds. (R. at 109.) On May 10, 1999, a toxic dry cleaning agent, PERC, allegedly spilled onto the backs of Plaintiff's legs. Plaintiff then wiped up the liquid with her hands thinking that it was just water. (R. 550.) Plaintiff stated that she screamed as a result of the burning pain in her hands, and had an allergic reaction that continues to affect her hands. (R. 115, 550.) However, Plaintiff also stated that her legs were not affected. (R. 550.) Plaintiff asserts that she is disabled as a result of the incident.

On June 5, 2000, as part of her initial application for SSI benefits, Plaintiff completed a Disability Report. (R. 107.) In this report, Plaintiff described her illness as a "chemical and environmental allergy," which causes her hands to break out in hives, burn, and run with pus. (R. 108.) Plaintiff further stated that she attempted to return to work after the incident, but could not, due to the condition of her hands. (*Id.*)

On August 22, 2000, Plaintiff completed a claimant questionnaire provided by the New York State Office of Temporary and Disability Assistance, Division of Disability Determinations. (R. 125.) Plaintiff stated that cooked once a day and shopped for groceries only once a month. (R. 125, 128.) Plaintiff stated that she lived with her three children at the time of the incident and that her eight-year-old daughter assisted her in performing household chores such as mopping and washing dishes. (R. 125.) Plaintiff stated that she did not need assistance traveling and that she used public transportation. (R. 126.) Plaintiff described her problem as a chemical and environmental allergy that resulted from a chemical spill that affected her hands. (R. 126.) Plaintiff asserted that both hands ached often and burned constantly, and, as a result, it was difficult to clean, cook, shop, wash herself, and fill out paperwork. (R. 127-29.) Plaintiff stated that the Elocon cream and Benadryl, which she ingested twice a day, did not relieve the

3

pain. (R. 128.) Plaintiff added that she could not use the creams everyday because they "backfire" and the Benadryl made her tired. (R. 127.)

At a hearing held on February 14, 2002, Plaintiff testified that it was difficult for her to pick up a pen and sign her name because her hands would crack and bleed. (R. 542.) Plaintiff testified that she had difficulty cooking food, cleaning the house, and doing laundry. (R. 545.) She further testified that she was depressed because she had difficulty bending her fingers and lifting objects. (R. 542.) Plaintiff stated that she suffered pain in her hands for several months after the incident. (R. 543.) From April to May 2000, Plaintiff attempted to work again at the dry cleaners, and she wore both plastic and winter gloves to protect her hands. However, this attempt proved unsuccessful because she began experiencing problems with her hands. (R. 544.) When asked if there was anything else that she would like to tell the ALJ about her condition, Plaintiff responded that she "[s]uffered -- the worst part is over. That's all I can say." (R. 546.)

At the hearing, the ALJ mentioned a document that Plaintiff signed while she was with her attorney but outside the presence of the ALJ. (R. 541.) The ALJ mentioned only that the document regards the disability time period, but did not read the contents of the document into the record. The ALJ also stated, "Thank you. I can never ask for it, but I appreciate it very much. Thank you." (*Id.*)

At the hearing held on August 23, 2007, after the Appeals Council remanded the case, Plaintiff testified that she went back to work at the dry cleaning store from February 17, 2000 through April 4, 2000. (R. 566.) Plaintiff testified that she had to quit because she "couldn't do it no more." (R. 568.) Plaintiff testified that her nieces and nephews helped out with the household chores during the disputed time period. (R. 576.) Plaintiff again testified that she was in a "depressed mood," although she stated that she was not seeing a psychiatrist at that time.

4

(R. 577.) Plaintiff testified that, during the disputed time period, her hands were bleeding, hurting, itching, and burning. (R. 573.) When asked about applying for jobs during this time period, Plaintiff testified that she worked at K-Mart for a short period but had to quit because of the negative effects of the clothing dye on her hands. (R. 578.)

Plaintiff also testified that she applied for a job with the United States Postal Service in March of 2002, for which she was required to get a physical examination. (R. 579, 580.) Plaintiff testified that she gave the United States Postal Service a disability letter and then waited for a response, but never received one. (R. 579.) Plaintiff further testified that she applied for many other jobs stating, "I'm always applying for something." (R. 580.) However, she did not give specific examples of other job applications. (R. 580, 581). Additionally, Plaintiff described her seasonal job at Tell Chocolate, where she packed, labeled, and filled chocolate boxes. (R. 583-84.)

At the hearing, the ALJ discussed the document that Plaintiff signed at the February 14, 2002 hearing, and read the document into the record. (R. 564.) The document stated: "I Desiree Ellis, Social Security number, agreed that as of August 31, 2000 my condition was no longer disabling. . . ." (*Id.*) When questioned about the document, Plaintiff seemed confused, stating, "I were, was aware of what I was signing at that time. But like I said before I was not aware because when we out and I discussed it after everything was over, and I found out that later on that is had stopped. I called them back." (R. 565.)

At the end of Plaintiff's testimony, in response to the ALJ's question as to whether Plaintiff had anything further to add to help understand the case, Plaintiff testified, "From that period, from '99, that was the worstest time. That was the worstest time. Because that's when everything finally really started up, really flared up." (R. 586.)

## C.    Vocational Evidence

Vocational expert ("VE") Miriam Green testified at the hearing on August 23, 2007.  The VE classified Plaintiff's past work experience according to a numbering system described in the Directory of Occupational Titles, published by the United States Department of Labor. Additionally, the VE classified Plaintiff's past work according to the Specific Vocational Preparation levels which indicate how long it may take to learn the job techniques and skills. The VE stated that Plaintiff's past work experience as a laborer packer classified as a "medium" in the Directory, and as a light Specific Vocational Preparation level two (up to one month). (R. 586, 587.) The VE further testified that Plaintiff's past experience at the dry cleaners was also a light level two or three, but because Plaintiff supervised and distributed work to other people, the level increased to four (between three to six months).  (R. 587.)  The VE indicated that the skills acquired by Plaintiff in these capacities are not transferable to other types of work. (R. 587.)

The VE identified jobs that a claimant of Plaintiff's age (younger), education (high school diploma), work history (general laborer and presser), and limitations (avoid exposure to chemicals and extensive exposure to water) could perform.  According to the VE, a person fitting this description could perform the following: packing or assembly job, telephone sales, or file clerk.  (R. 588, 589, 590.)

The VE identified several jobs available to Plaintiff, with the assumption that she was: (1) unable to lift more than ten pounds, (2) limited in pushing and pulling, and (3) limited in repetitive hand use.  The VE stated that a claimant with these limitations would be able to work as a telephone salesperson, file clerk, surveillance system monitor, or hospital admitting clerk. (R. 590, 591.)

**D.     Medical Evidence**

On May 12, 1999, Plaintiff went to the Coney Island Hospital Emergency Department for a rash on her neck and hives all over her body. (R. 245-46, 312-14, 318.)  The doctor diagnosed Plaintiff with Urticaria, which is a skin rash or hives. (R. 314.)

On May 19, 1999, Plaintiff went to the Staten Island University Hospital, and saw Dr. Umesh Lingegowda, who diagnosed Plaintiff with allergic reactions and Atopic Dermatitis. (R. 173.)  Dr. Lingegowda prescribed Diphenhist, Methylprednisolone, and Hydrocortisone 1%, referred Plaintiff to Dermatology, and advised Plaintiff to follow up in three months. (*Id.*)

On May 26, 1999, Plaintiff saw Dr. Paul Contard at the Staten Island University Hospital. Dr. Contrard diagnosed Plaintiff with acute Eczema and prescribed Elocon. (R. 172.)

On July 1, September 14, and December 17, 1999, Plaintiff saw Dr. Lingegowda at the Staten Island University Hospital. (R. 171, 168, 159.)  At each of these visits, Plaintiff complained of a rash, and Dr. Lingegowda diagnosed Plaintiff with Atopic Dermatitis/Eczema and advised her to follow up with a Dermatologist/Allergist. *Id.*

On July 28, 1999, Plaintiff saw Dr. Contard at the Staten Island University Hospital for a Dermatology consultation. (R. 169.)  Dr. Contard diagnosed Plaintiff with Atopic Eczema and prescribed Psorcon. *Id.*

On October 12, 1999, Dr. Sherib completed a Physician's Assessment of Medical Condition for Plaintiff. (R. 150.)  This assessment indicated that Plaintiff had a skin rash and possible allergic reactions. *Id.*  The assessment labeled Plaintiff indefinitely employable, subject to limitations.  Specifically she had to avoid climbing ladders, balancing, pushing/pulling, operating motor vehicles, and being exposed to temperature extremes, noise, vibration, dust,

fumes, heights, and machinery. *Id.* Additionally, Dr. Sherib recommended that Plaintiff avoid

exposing her hands to water, detergents, or chemicals. *Id.*

On January 3, 2000, Plaintiff saw Dr. Kunil Bae at the Staten Island University Hospital,

suffering from hand Eczema and a facial rash. (R. 157.) Dr. Bae diagnosed Plaintiff with Atopic

Eczema and prescribed Tenovate for her hands and Elocon cream for her face. *Id.*

On February 11, 2000, Plaintiff saw Dr. Lingegowda at the Staten Island University

Hospital, complaining of pain in her right hand and a rash. Dr. Lingegowda diagnosed Plaintiff

with chronic Atopic Dermatitis/Eczema, advised her to continue using Psorcon and Synacort,

and referred her to the Dermatology/Allergy clinic. (R. 156.)

On June 14, 2000, Plaintiff saw Dr. Lingegowda at the Staten Island University Hospital

for an annual physical examination. Dr. Lingegowda diagnosed Plaintiff with Atopic

Dermatitis/Eczema and advised her to continue using Elocon cream and to follow up with a

Dermatologist. (R. 155.)

On August 2, 2000, Plaintiff saw Dr. Lingegowda at the Staten Island University

Hospital, complaining of pus and itchiness on her neck and hands. (R. 152.) Dr. Lingegowda

diagnosed Plaintiff with Atopic Dermatitis and prescribed Lac-Hydrin 5% and the continued use

of Elocon cream. *Id.*

On September 1, 2000, Dr. Lingegowda completed a physician's report form provided by

the Office of Temporary and Disability Assistance, Division of Disability Determinations. (R.

201.) The form indicated that Plaintiff's treating diagnosis was Atopic Dermatitis/Chronic

Eczema. *Id.* Plaintiff's symptoms were itching and rash. *Id.* Dr. Lingegowda noted that

Plaintiff did not have any limitations involving carrying, pushing, pulling, standing or sitting.

(R. 202, 203.) Dr. Lingegowda further recommended that Plaintiff avoid working with chemicals or exposing her hands to dust or moisture. (R. 203.)

On September 12, 2000, a letter from Dr. Myron Seidman at Kings-M.D. Medical Services indicated that Dr. Seidman performed an internal medical exam on Plaintiff. (R. 205-07.) Plaintiff complained of having allergies for a year and a half, back pain for seven months, and a nervous disorder for one and a half years. (*Id.*) Dr. Seidman noted that Plaintiff had a mild rash on her body. (*Id.*) Dr. Seidman wrote: "I could not confirm limitation lifting and carrying, standing walking, sitting or pushing/pulling of controls. In view of her rash she should avoid chemical exposure or extensive water exposure." (R. 207.)

On October 10, 2000, Dr. Harvey A. Barash conducted an interview of Plaintiff. (R. 213.) Dr. Barash concluded that Plaintiff could manage adequately without psychiatric treatment, and that her overall psychiatric prognosis was fair. (R. 214.) In the Diagnosis section of the report, Dr. Barash further stated that he "[r]ule[d] out a mild adjustment disorder, with depressed mood" and that Plaintiff has a "History of chemical trauma." (R. 214.)

On January 30, 2001, a Physical Residual Functional Capacity Assessment was completed. (R. 224.) The Assessment indicated that Plaintiff's only limitation was that she had to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (R. 221.)

On February 2, 2001, Dr. Kennedy Walsh completed a Psychiatric Review Technique form. (R. 225.) Dr. Walsh indicated that Plaintiff suffered from a Mild Adjustment Disorder, and had mild to moderate limitations. (R. 228, 235.) On February 2, 2001, Dr. Walsh also completed a Mental Residual Functional Capacity Assessment. (R. 239.) Dr. Walsh listed Plaintiff as either "Not Significantly Limited" or "Moderately Limited" in all categories. (*Id.*)

9

On May 8, 2002, Plaintiff went to the Coney Island Hospital. (R. 366.) Plaintiff was suffering from throat pain radiating to her ears and eyes, and had a rash on the right side of her neck. *Id.* The doctor gave Plaintiff Benadryl, Antihistamics, and Nasacort. (R. 369.)

On May 22 and 29, 2002, Plaintiff visited the Coney Island Hospital, suffering from a rash all over her body. (R. 341, 373.) On May 29, the doctor diagnosed Plaintiff with Urticaria and Contact Dermatitis, and noted skin irritation on Plaintiff's neck, face, and hands. *Id.* The doctor prescribed Benadryl and advised Plaintiff to return in one month. (R. 346, 374.)

On October 25, 2002, Plaintiff saw Dr. Avraham Tal at the Coney Island Hospital for a monitoring visit. (R. 382.) Dr. Tal diagnosed Plaintiff with Contact Dermatitis and Atopic Dermatitis. (R. 382, 384.)

Plaintiff visited the Coney Island Hospital three times in 2003 during the disputed period. On January 31, 2003, Plaintiff saw Dr. Marcia Deitz for a monitoring visit. (R. 385.) Dr. Deitz diagnosed Plaintiff with Contact Dermatitis and advised her to return in four months. (*Id.*) On April 3, 2003, Plaintiff saw Dr. Tal for a monitoring visit. (R. 389.) Dr. Tal noted that Plaintiff had dry hands with scaly dermatitis. (R. 390.) Dr. Tal diagnosed Plaintiff with Contact Dermatitis and advised her to return in three months. *Id.* On May 23, 2003, Plaintiff saw Dr. Tal again for a monitoring visit. (R. 394.) Dr. Tal diagnosed Plaintiff with Contact Dermatitis and advised her to return in one month. (*Id.*)

## APPLICABLE LAW

### A.    Standard of Review

The district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In

reviewing the Commissioner's decision, the court need not determine de novo whether a claimant is disabled. *See Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Rather, the court's inquiry is limited to the question of whether the Commissioner applied the correct legal standard in making the determination and, if so, whether such determination is supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997). The court may remand the case if the ALJ's determination is "based upon legal error or not supported by substantial evidence." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)); *see also Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

"Substantial evidence 'is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lamay v. Astrue*, 562 F.3d 503, 507 (2d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). When the record does not contain substantial evidence supporting the ALJ's decision, remand is both appropriate and necessary. *See, e.g., Snell v. Apfel*, 177 F.3d 128, 136 (2d Cir. 1999); *Tejada v. Apfel*, 167 F.3d 770, 774-75 (2d Cir. 1999).

"[T]o determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)). Moreover, the court must be satisfied "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Id.* at 112 (quoting *Cruz v. Sullivan*, 912 F.2d 8 (2d Cir. 1990)).

In reviewing a *pro se*'s filing, the court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Accordingly, the court will construe plaintiff's pleadings and papers "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

**B.     Determining Disability**

To receive disability benefits, plaintiff must be "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). Plaintiff establishes disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. § 423(d)(1)(A). Plaintiff bears the initial burden of proof on disability status and is required to demonstrate that status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether plaintiff is disabled under the Act as set forth in 20 C.F.R. § 416.920. First, plaintiff is not disabled if she is working and performing "substantial gainful activity." 20 C.F.R. § 416.920(b). Second, the ALJ considers whether plaintiff has a "severe impairment," without reference to age, education or work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental "ability to conduct basic work activities." 20 C.F.R. § 416.920(c). Third, the ALJ will find plaintiff disabled if her impairment meets or equals an impairment listed in Appendix 1.

20 C.F.R. § 416.920(d). If plaintiff does not have a listed impairment, the ALJ makes a finding about plaintiff's "residual functional capacity" ("RFC") in steps four and five. 20 C.F.R. § 416.920(e). In the fourth step, plaintiff is not disabled if she is able to perform "past relevant work." 20 C.F.R. § 416.920(e). Finally, in the fifth step, the ALJ determines whether plaintiff could adjust to other work which exists in the national economy, considering factors such as age, education, and work experience. If so, plaintiff is not disabled. 20 C.F.R. § 416.920(f). At this fifth step, the burden shifts to the Commissioner to demonstrate that plaintiff could perform other work. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Carroll*, 705 F.2d at 642).

## DISCUSSION

### A.    The ALJ's Decision

The ALJ found that the first and second requirements of demonstrating disability were met because Plaintiff did not engage in substantial gainful activity during the disputed period, and Plaintiff's chemical sensitivities and dermatitis have caused significant limitations in her ability to work. (R. 13-14.)

With regard to the third step, however, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met the severity criteria listed in Appendix 1 to to 20 C.F.R. Part 404, Subpart P. *See* 20 C.F.R. § 416.920(d); (R. 14). The ALJ referenced Appendix 1, sections 8.02 and 8.05 (Atopic Dermatitis) as applicable to Plaintiff's situation. (R. 14.) The ALJ concluded that medical treatment considerably improved Plaintiff's condition, such that the severity of Plaintiff's limitations was not sufficient to meet the requirements of any impairment listed in Appendix 1. *Id.*

In determining that Plaintiff did not meet the requirement of the limitations, the ALJ reviewed Plaintiff's medical history at the Coney Island Hospital. The ALJ concluded that the Coney Island clinic notes "suggest that the claimant's condition had come under management with medication although she did continue to have occasional exacerbations." (R. 14.) Moreover, the ALJ found that the claimant did not "require assistance with shopping or meal preparation." (R. 16.) The ALJ further stated that it was clear that Plaintiff's hands improved because, although Plaintiff saw Dr. Tal in April 2003, there was no treatment again until February 24, 2004. (R. 14.) The ALJ also separately stated that there was no indication that Plaintiff was treated in 2003. (R. 16.)

The ALJ also referenced Dr. Sherib's October 1999 report, concluding that the "claimant could do light exertion" subject to specific limitations. (R. 15.) The ALJ also referenced Dr. Seidman's September 2000 consultative examination report, and noted that Dr. Seidman stated that he could not confirm any limitations, but that Plaintiff should avoid chemical exposure or extensive water exposure. (R. 15, 207.) Additionally, the ALJ referenced Dr. Barash's report regarding Plaintiff's psychiatric care, and stated that the report "reflected no more than moderate restrictions," and that a mild adjustment disorder with depressed mood had been ruled out. (R. 16.)

The ALJ considered Plaintiff's overall credibility to be suspect based on a visual assessment of the appearance of Plaintiff's hands at a hearing. (R. 17.) The ALJ stated that, although Plaintiff stated that her hands were "ugly," "her hands were not swollen, bleeding, cracking, nor did they evidence any dermatitis or eczema—not a bit 'ugly.'" (*Id.*) The ALJ concluded that, "[g]iven the claimant's relatively undisturbed daily living activities despite her impairment, her allegations of total disability are not supported by the record." (*Id.*)

14

The ALJ decided the fourth step in Plaintiff's favor, concluding that Plaintiff had no past relevant work to consider. (R. 17.) At the fifth step, the ALJ concluded that there are jobs existing in significant numbers in the national and local economies that Plaintiff could perform. The ALJ adopted the testimony of the VE, who concluded that Plaintiff could perform a number of different jobs listed in the Directory of Occupational Titles. (R. 18.) The ALJ thus concluded that Plaintiff was not disabled for the relevant time period.

**B.      The ALJ's Decision is Not Supported by Substantial Evidence**

**1.      The ALJ Failed to Consider All of the Evidence in the Record**

Although the ALJ applied the correct legal standards, she failed to consider all of the evidence in the record. "An ALJ must acknowledge all evidence that supports a claim of disability and, if [s]he concludes otherwise, [s]he must explain why the pertinent evidence does not justify the result sought by the claimant." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 434 (S.D.N.Y. 2010); *Pacheco v. Barnhart*, 2004 WL 1345030, at * 4 (E.D.N.Y. June 14, 2004). Furthermore, "[a]lthough the ALJ is not required to reconcile every ambiguity and inconsistency of medical testimony, we cannot accept an unreasoned rejection of evidence that supports plaintiff's position." *Pagan on Behalf of Pagan v. Chater*, 923 F. Supp. 547, 556 (S.D.N.Y. 1996) (internal citations omitted). "[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Pacheco*, 2004 WL 1345030, at * 4 (internal citations and quotation marks omitted). "[A]n ALJ cannot 'pick and choose evidence in the record that supports [her] conclusions.'" *Id.* (internal citations and quotation marks omitted). "The ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Pagan*, 923 F. Supp. at 556.

Here, the ALJ failed to consider significant portions of the record. There is evidence in the record that contradicts the ALJ's assertion that Plaintiff's condition improved, which the ALJ supported by stating that Plaintiff had been seen in April 2003, but had not been treated again until February 24, 2004. (R. 14; *see also* R. 16 (ALJ stating later in her decision that "there is no indication that the claimant had been treated in 2003").) Medical records from Coney Island Hospital indicate that Plaintiff was seen on January 31 and April 3, 2003, (R. 385, 389), and then three times between April 3, 2003 and February 24, 2004. On May 23, 2003, Plaintiff saw Dr. Tal for a monitoring visit, and was diagnosed with Contact Dermatitis and advised to return in one month. (R. 394.) Plaintiff saw Dr. Tal again on October 23, 2003 for Contact Dermatitis/Atopic Dermatitis, and he referred her to a dermatologist for Eczematous Dermatitis and advised her to return in three months. (R. 399-401.) Plaintiff saw Dr. Tal again on January 8, 2004, complaining of limb pain, at which time she was diagnosed with Rhinitis, Allergic and Contact Dermatitis. (R. 402.) These records do not indicate that Plaintiff's condition improved. Rather, they indicate that the condition persisted, sometimes affecting not only her hands, but other parts of her body as well.

Moreover, the ALJ referenced Dr. Sherib's October 1999 report, yet failed to mention the following findings: (1) that Plaintiff had a skin rash and possible allergic reactions, (2) that Plaintiff was indefinitely employable subject to the listed limitations and, (3) that Plaintiff's hands should not be exposed to water, detergents, or chemicals. (R. 15, 150.) The ALJ also referenced Dr. Lingegowda's September 2000 report, but did not mention that the doctor concluded that Plaintiff should avoid exposing hands to moisture. (R. 203.)

Finally, the ALJ failed to consider the Psychiatric Review Technique form completed by Dr. Kennedy Walsh on February 2, 2001. (R. 225.) Dr. Walsh indicated that Plaintiff suffered from a Mild Adjustment Disorder, and had mild to moderate limitations. (R. 228, 235.)

"Where the ALJ 'pick[s] and choose[s] evidence in the record that supports [her] conclusions' remand is appropriate." *Wheller ex rel. A.T.W. v. Astrue*, 2011 WL 666090, at *6 (N.D.N.Y. Feb. 14, 2011) (quoting *Pacheco*, 2004 WL 134505, at *4 (E.D.N.Y. June 14, 2004)). In the instant case, the ALJ seemingly chose to ignore significant evidence that supported a finding of disability. Therefore, remand is appropriate.

### 2. The ALJ Failed to Consider Plaintiff's Testimony

In addition, the ALJ failed to detail the basis for her credibility assessment of Plaintiff's subjective statements about her symptoms, and did not provide enough specificity for the court to determine whether the assessment was supported by substantial evidence. Although a claimant's statements about her condition, on their own, are not enough to establish disability, "a claimant's complaints of pain and limitation are . . . entitled to great weight where they are supported by objective medical evidence." *Sullivan v. Commissioner of Social Sec.*, 2010 WL 5285356, at *4 (N.D.N.Y. Dec. 17, 2010) (internal quotation marks and citation omitted). "If the ALJ rejects plaintiff's testimony . . . he must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence. Absent these findings, remand is appropriate." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435-36 (S.D.N.Y. 2010) (internal citations omitted).

Here, although the ALJ stated that she considered some of Plaintiff's subjective complaints, the ALJ failed to adequately discuss why she ultimately found Plaintiff's testimony

incredible. While noting Plaintiff's contentions that she "had to limit her cooking to once daily," and had difficulty cleaning and cooking, the ALJ nevertheless found that these contentions were not credible. (R. 17; *see also* R. 16 (noting that Plaintiff did not "require assistance with shopping or meal preparation.").) In rejecting these assertions, the ALJ stated that Plaintiff's "overall credibility is somewhat suspect" because, at the hearing, Plaintiff's hands did not appear to be "swollen, bleeding, or cracking." (R. 17.) The ALJ completely disregarded Plaintiff's statements and testimony that her daughter, son, nephews, and nieces assisted her in performing household chores. (R. 108, 125, 128, 545, 576.) Moreover, the ALJ's conclusion ignores the relevant medical evidence supporting Plaintiff's assertions. Plaintiff has documented several instances when her hands were painful, cracked, and bleeding, which the ALJ acknowledged elsewhere in her decision. Moreover, it is unclear why the appearance of Plaintiff's hands at a hearing several years after the disputed time period would affect Plaintiff's credibility regarding complaints during the disputed time period.

The ALJ also found that Plaintiff was not believable because she "has consistently sought employment," which the ALJ argued demonstrated that Plaintiff was able to work. (R. 17.) This assertion by the ALJ ignores Plaintiff's testimony that her employment attempts were unsuccessful because of difficulty with her hands. (R. 544, 566-68, 578.) Therefore, it is unclear why Plaintiff's attempts at employment should undermine her complaints regarding her hands.

In sum, the ALJ failed to take into account all pertinent evidence in the record. An ALJ's "failure to take into account all pertinent evidence is plain error." *Correale-Englehart*, 687 F. Supp. 2d at 437. On remand the ALJ is to consider all of Plaintiff's testimony and the medical evidence and provide a reasoned explanation if Plaintiff's complaints are not found credible.

### 3.     Further Consideration Needed for Fifth Step

At the fifth step, Plaintiff's ability to perform other work, "the burden shifts to the Commissioner to demonstrate that the claimant could perform other work." *Coscia v. Astrue*, 2010 WL 3924691, at * 7 (E.D.N.Y. Sep. 29, 2010) (citing *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002). In this case, the ALJ fully accepted the testimony of the VE regarding Plaintiff's ability to perform other work. In light of the need for reconsideration of the administrative record regarding Plaintiff's limitations and abilities, on remand, the ALJ should reconsider this factor as well.[2]

## CONCLUSION

For the reasons set forth above, Defendant's motion for judgment on the pleadings is denied and, this case is remanded to the Commissioner pursuant to the fourth sentence of Section 405(g) for further evidentiary proceedings. On remand, the court directs the ALJ to consider all of the evidence in the record. Moreover, the ALJ should consider Plaintiff's testimony, and provide a reasonable explanation, based on the entire record, if the testimony is found not to be credible. The court also directs the ALJ to reconsider Plaintiff's ability to perform other work.

SO ORDERED.

Dated:  Brooklyn, New York
        March 30, 2011

                                                        /s/
                                                DORA L. IRIZARRY
                                                United States District Judge

---

[2] In light of the fact that this case is being remanded for the reasons stated above, the court need not address the Defendant's argument that Plaintiff improperly submitted new evidence in support of her opposition that could not properly be considered by this court because the evidence was not new and there was no good cause for the failure to put forth the evidence prior to these proceedings.